The **MAYFLOWER INSURANCE COMPANY**, Appellant,

v.

**Roosevelt OSBORNE, Alice Roe Osborne and Rose Marie Osborne, a minor,** Appellees.

No. 9057.

United States Court of Appeals Fourth Circuit.

Argued Oct. 4, 1963.

Decided Jan. 8, 1964.

H. E. Wilson, Kingsport, Tenn. (G. R. C. Stuart, Penn, Stuart & Stuart, Abingdon, Va., and Wilson, Worley & Gamble, Kingsport, Tenn., on brief), for appellant.

David S. Haynes, Bristol, Tenn. (Francis W. Flannagan, Bristol, Va., Curtin, Haynes & Winston, Bristol, Tenn., and Flannagan & Flannagan, Bristol, Va., on brief), for appellees.

Before SOBELOFF, Chief Judge, BELL, Circuit Judge, and THOMSEN, District Judge.

THOMSEN, District Judge.

Mayflower Insurance Company, plaintiff below, appeals from a summary judgment declaring that it is obligated, under an automobile liability policy issued to Alice Osborne, to pay any final judgment that may be recovered against her husband, Roosevelt Osborne, in tort actions filed against him in a Tennessee state court by her and her daughter, Rose Marie. The accident out of which the claims arose occurred in Kentucky, where a wife can sue her husband. The Osbornes reside in Virginia, where the policy in question was issued, covering a Chevrolet automobile which the wife owned and which the husband was driving at the time of the accident. Mayflower contends that the husband breached the cooperation clause in the policy by voluntarily submitting himself to service of process in Tennessee—where he was not otherwise amenable to service —through a collusive arrangement with the attorneys representing his wife and stepdaughter, who thought Tennessee was the most favorable forum for their cases.[1] The district court held that Mayflower had waived or was estopped to rely on the alleged breach of the cooperation clause.

There is no dispute about the basic facts, which have been stipulated or admitted by the pleadings. Most of them are set out in the opinion of the district judge, Mayflower Insurance Company v. Osborne, 216 F.Supp. 127, at 128 et seq.

■ 1. Mayflower's first point may be disposed of briefly. It contends that the policy does not cover a suit filed by the named insured (Alice) against an additional insured (Roosevelt). Although the authorities are divided on the question whether an automobile liability policy, in the absence of an express exclusion,[2] covers an injury to the named insured caused by the negligent operation of the insured automobile by an additional insured, the weight of authority allows recovery.[3] We agree with the district judge that in the absence of a Virginia decision on this question, such a claim is covered by the policy.

■ 2. There is no Virginia decision directly in point on the question whether the husband violated the cooperation clause of the policy by voluntarily submitting himself to service of process in Tennessee. The few cases bearing directly on the question are collected in 8 Appleman, Insurance Law and Practice, sec. 4779, in an annotation in 66 A.L.R.2d at 1238, and in a case note in 56 Mich. L.R. at 1208 et seq. No clear pattern appears, but the weight of authority indicates that it is a breach of the cooperation clause for an insured, in collu-

---

1. Virginia does not permit a suit by a wife against her husband for an accident occurring in Virginia. Nor does Tennessee permit such a suit for an accident in Tennessee. The attorneys employed by Roosevelt Osborne for his wife and stepdaughter evidently felt that the Tennessee conflict of laws rule would be more favorable to them than the Virginia rule. They did not wish to sue in Kentucky. In January 1963 the Tennessee actions resulted in judgments of $5,000 for Alice, $500 for Rose Marie, and $1,000 for Alice in expenses, etc. of Rose Marie. An appeal from those judgments is now pending, in which the conflict of laws point has been argued.

2. Cf. Jenkins v. Morano, E.D.Va., 74 F. Supp. 234 (1947).

3. See annotations in 106 A.L.R. at 1248 and at 1394; 7 Am.Jur.2d, Automobile Insurance, sec. 128, p. 447.

sion with those claiming damages against him, to submit himself voluntarily to service of process in a place where he would not otherwise be amenable to suit.

■ Under Virginia law, it is not essential for the insurer to show prejudice to establish the defense of non-cooperation. Grady v. State Farm Mut. Auto Ins. Co., 4 Cir., 264 F.2d 519 (1959); Cooper v. Employers Mut. Liab. Ins. Co., 199 Va. 908, 103 S.E.2d 210 (1958); State Farm Mut. Auto. Ins. Co. v. Arghyris, 189 Va. 913, 55 S.E.2d 16 (1949). To amount to a breach however, the non-cooperation must be of a substantial nature; it was substantial here, because the attorneys retained by Roosevelt Osborne for his wife and stepdaughter believed that they had a better chance to recover against him in Tennessee than in Kentucky, where the accident occurred, or in Virginia, where the Osbornes lived.

■ Counsel for the Osbornes argue that an insured is not required to cooperate with an insurer which has disclaimed liability, citing Hunter v. Hollingsworth, 165 Va. 583, 183 S.E. 508, and seek to excuse on that ground Roosevelt Osborne's failure to cooperate. This argument overlooks the fact that Mayflower did not disclaim liability under the policy until after he had submitted to service of process in Tennessee, and Mayflower had learned by means of a deposition the circumstances surrounding the collusive service. Before that time, as the district judge found, the adjuster had refused to settle the claims of the wife and daughter because he thought that the husband had good defenses to their claims and that the company could successfully defend him. We agree with the district judge that such denial of liability by the adjuster did not relieve Roosevelt Osborne of his duty to cooperate.

■ In most of the cases in which the Courts have found lack of cooperation the insured had not only submitted himself to service of process in a jurisdiction in which he could not otherwise have been served but had also made false statements to the insurer. False statements, however, are not an essential element of non-cooperation. A recent opinion refers to "the established doctrine that the cooperation clause will be deemed to be violated if the insured by collusive conduct appears to be assisting the claimant in the maintenance of his suit * * *." Elliott v. Metropolitan Casualty Ins. Co., 10 Cir., 250 F.2d 680, 66 A.L.R.2d 1231 (1957). In the instant case the mere fact that the husband employed an attorney to represent his injured wife and stepdaughter did not constitute a violation of the clause. Appleman, op. cit., sec. 4778. But when by collusive prearrangement with their attorney he voluntarily submitted himself to service of process in the State of Tennessee, to which he was not otherwise amenable, he did violate the cooperation clause of the policy, and Mayflower was then justified in disclaiming liability with respect to the Tennessee tort actions, unless it is estopped to raise or has waived the defense of non-cooperation.

■ 3. The district judge did not decide whether Roosevelt Osborne had breached the cooperation clause but did decide that, by defending the Curry suits, brought in Kentucky by the owner and operator of the other car in the collision, and demanding the Osbornes' cooperation in the defense of those cases, Mayflower had waived its right to deny liability because of the alleged breach. We have concluded that he erred in so ruling.

In a case where, as here, the insured breached the cooperation clause with respect to certain claims but not with respect to others, a Missouri Court held that there had been no forfeiture of the policy as a whole, "for the policy may well remain in full force and effect as to those losses sustained by the assured where the conditions of the policy have been met, while a recovery may be defeated as to a particular loss in connection with which the assured was remiss in the performance of his obligations un-

der the contract." Finkle v. Western Auto Ins. Co., 224 Mo.App. 285, 26 S.W. 2d 843, 847 (1930).[4] And in National Surety Corp. v. Wells, 5 Cir., 287 F.2d 102, 106 (1961), the Court said: "Certainly (assuming there had been no other breach) the mere failure of the assured to forward process in one case would not, for example, terminate coverage or duty to defend in suits thereafter instituted by other damage plaintiffs in a multi-party accident."

The district judge considered as controlling a Virginia decision, State Farm Mut. Auto. Ins. Co. v. Arghyris, 189 Va. 913, 55 S.E.2d 16 (1949), where the Court, in holding that an insurance company need not show prejudice to avoid liability upon the breach of a policy provision for cooperation by the insured, cited with approval the following passage from Coleman v. New Amsterdam Casualty Co., 247 N.Y. 271, 160 N.E. 367, 369, 72 A.L.R. 1443: "The plaintiff makes the point that the default should be condoned, since there is no evidence that co-operation, however willing, would have defeated the claim for damages or diminished its extent. For all that appears, the insurer would be no better off if the assured had kept its covenant, and made disclosure full and free. The argument misconceives the effect of a refusal. Cooperation with the insurer is one of the conditions of the policy. When the condition was broken, the policy was at an end, if the insurer so elected. The case is not one of the breach of a mere covenant, where the consequences may vary with fluctuations of the damage. There has

been a failure to fulfill a condition upon which obligation is dependent." The holding in Arghyris was followed by this Court in Grady v. State Farm Mut. Auto Ins. Co., 264 F.2d 519 (1959). But neither Coleman, Arghyris nor Grady dealt with the situation presented here, where an insured violated the terms of the co-operation clause with respect to certain claims, but not with respect to others.

Mayflower never claimed that its obligations under the policy with respect to the Curry suits had been affected by the alleged breach of the cooperation clause in connection with the Tennessee cases, but limited its disclaimer to the Tennessee cases. We do not believe the Virginia Court would hold that the breach of the cooperation clause with respect to the Tennessee cases terminated the entire contract. Neither the defense and eventual settlement of the Curry suits by Mayflower nor its demand that the Osbornes cooperate in the defense of those suits amounted to either a waiver or an estoppel preventing it from relying on the breach of the cooperation clause with respect to the Tennessee actions.

We agree with the district judge that the failure of Mayflower to move to quash the service of process in the Tennessee cases did not constitute a waiver of its rights. And we agree with his conclusion that no waiver resulted from the medical payments Mayflower made to Alice under a specific clause in the policy.

The judgment of the district court must be reversed, with costs, and the case remanded with instructions to enter a judgment in favor of the plaintiff com-

4. The Court added: "By this we mean that the condition of the policy requiring co-operation by the assured is in the nature of a condition precedent to liability on the company's part for the loss growing out of a claim with the disposition of which the assured's assistance is demanded; and we see no reason why we should hold that a breach of such condition in a given instance should have the effect of nullifying and vitiating the contract for all time and purposes. In other words, the failure of the assured to aid in secur- ing information and evidence when requested by the company will not terminate the company's entire liability as a matter of law, the policy not expressly making such failure a cause of forfeiture, but, in an action by the assured for indemnity to cover a particular loss sustained, his failure will be evidence for the company on the vital question of whether he was guilty of such a breach of his contract as to serve to defeat his action, and to relieve the company from liability therein." 26 S.W.2d at 847.

pany declaring that it is not obligated to pay any judgments recovered against Roosevelt Osborne in the Tennessee tort actions referred to in the complaint.

Reversed.